**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

JONATHAN BERKS                                                          PETITIONER
ADC #151273

V.                                        NO. 5:16CV00371-BRW-JTR

WENDY KELLEY, Director,                                            RESPONDENT
Arkansas Department of Correction

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent

to United States District Judge Billy Roy Wilson. You may file written objections to

all or part of this Recommendation. If you do so, those objections must: (1)

specifically explain the factual and/or legal basis for your objection; and (2) be

received by the Clerk of this Court within fourteen (14) days of this

Recommendation. By not objecting, you may waive the right to appeal questions of

fact.

## I. Introduction

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus

filed by Jonathan Berks ("Berks"), an Arkansas Department of Correction ("ADC")

inmate. *Doc. 2*. Before addressing Berks's habeas claims, the Court will review the

procedural history of the case in state court.

On November 2, 2011, a Garland County jury convicted Berks of second-degree murder and aggravated residential burglary. He was sentenced to two consecutive thirty-year terms of imprisonment in the ADC. *Doc. 8-2, at 406-08.*

Berks appealed to the Arkansas Court of Appeals, which affirmed his convictions on March 27, 2013. *Berks v. State*, 2013 Ark. App. 203, 427 S.W.3d 98 (*Berks I*). He then had eighteen days, until April 14, 2013, to file a petition for review with the Arkansas Supreme Court. Ark. Sup. Ct. R. 2-4(a). Because April 14 fell on a Sunday, the deadline became Monday, April 15, 2013. *See* Ark. R. App. P.-Crim. 17. Berks did *not* file a petition for review with the Arkansas Supreme Court.

On May 1, 2013, Berks filed a timely *pro se* Rule 37 petition in the trial court, which he later amended. *Doc. 8-10, at 12-35.* On December 27, 2013, the trial court entered an order denying Rule 37 relief. *Id. at 36-37.* On January 23, 2014, Berks filed a *pro se* motion for modification of the trial court's order to include a ruling on omitted issues, which was denied on February 7, 2014. *Id. at 38-41.* From that date, Berks had thirty days, until March 10, 2014, to file a notice of appeal to the Arkansas Supreme Court. *See Berks v. State,* 2015 Ark. 234, at 2-3, 463 S.W.3d 289, 291 (*Berks II*). Berks did *not* file a notice of appeal by the March 10, 2014 deadline.

On April 7, 2015, Berks filed a *pro se* Motion for Belated Appeal with the Arkansas Supreme Court, claiming that he did not receive the trial court's final February 7, 2014 order denying Rule 37 relief until March 15, 2014, *after* the

deadline for filing a notice of appeal. *Doc. 8-11.* On May 21, 2015, the Court *granted*

Berks's Motion for Belated Appeal of the trial court's denial of his Rule 37 petition

based on its determination that Berks had demonstrated "good cause" to excuse his

failure to timely file a notice of appeal. *Berks II,* 2015 Ark. 234, at 3-4, 463 S.W.3d

at 291-92.

On October 27, 2016, the Arkansas Supreme Court affirmed the trial court's

order denying Rule 37 relief. *Berks v. State,* 2016 Ark. 364, 501 S.W.3d 366 (*Berks*

*III*).

On December 2, 2016, Berks initiated this § 2254 habeas action.[1] He argues:

(1) his trial counsel was constitutionally ineffective in advising him to reject a thirty-

year plea offer; and (2) his convictions were obtained in violation of the Double

Jeopardy Clause. *Doc. 2.*

In her Response, Respondent argues that Berks's claims should be dismissed

because: (1) the § 2254 Petition is time-barred; (2) his ineffective assistance claim

is without merit; and (3) his double jeopardy claim is procedurally defaulted and

without merit. *Doc. 8.* Berks filed a Reply. *Doc. 10.*

---

[1]Although the Clerk of Court received and file-stamped Berks's habeas Petition on December 12, 2016, it was deemed "filed," as a matter of law, on the date it was delivered to prison authorities for mailing to the Court. *Ford v. Bowersox,* 178 F.3d 522, 523 (8th Cir. 1999); *see* Rule 3(d), Rules Governing § 2254 Cases in United States District Courts. The Court has given Berks the benefit of assuming that he delivered his petition to prison authorities for mailing on December 2, 2016, the day he signed it. *Doc. 2 at 22.*

Because all of Berks's habeas claims are barred by the one-year statute of limitations contained in 28 U.S.C. § 2244(d)(1), the Court need not address Respondent's other arguments for dismissal.

## II. Discussion

### A.    Calculation of Limitations Period

A state prisoner seeking to challenge his state court conviction in federal court generally must file a petition for habeas relief within one year of the date the "judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a criminal defendant fails to seek discretionary review of his criminal conviction in the state's highest court, his judgment becomes "final" when the time for seeking such review expires. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); *see Johnson v. Hobbs,* 678 F.3d 607, 610 (8th Cir. 2012) (in cases from the Arkansas Court of Appeals, a conviction becomes "final" when the prisoner can no longer file a petition for review with the Arkansas Supreme Court).

On March 27, 2013, the Arkansas Court of Appeals affirmed Berks's convictions. Because he elected not to seek discretionary review from the Arkansas Supreme Court, his convictions became "final" on April 16, 2013, when he could no

longer seek review from that Court.[2] Absent any tolling, Berks had one year from that date to initiate this § 2254 habeas action.

### B.    Statutory Tolling

The federal limitations period is tolled while a "properly filed" application for post-conviction relief is pending in state court. 28 U.S.C. § 2244(d)(2). However, the limitations period is *not tolled* in the interval between the conclusion of direct review and the filing of a state post-conviction petition. *Bear v. Fayram,* 650 F.3d 1120, 1125 (8th Cir. 2011). Moreover, an application remains "pending" only "as long as the ordinary state collateral review process is in process – *i.e.,* until the completion of that process." *Carey v Saffold,* 536 U.S. 214, 219-20 (2002). Once a prisoner's deadline has passed for filing a notice of appeal of the denial of state post-conviction relief, without action by the prisoner, the application "cease[s] to be 'pending'" because "there is nothing 'in continuance' or 'not yet decided.'" *Coulter v. Kelley,* 871 F.3d 612, 622 (8th Cir. 2017).

Based on these statutory tolling rules, the Court has calculated the one-year limitations period for the timely initiation of this federal habeas action as follows:

- March 27, 2013: The Arkansas Court of Appeals enters its decision, on direct appeal, affirming Berks's convictions.

---

[2]*See Johnson,* 678 F.3d at 610 & n.3 (state conviction became "final" when the prisoner "could no longer seek review" from the Arkansas Supreme Court, *i.e.,* the day after the deadline for filing a petition for review with that court); *King v. Hobbs,* 666 F.3d 1132, 1135-36 & n.4 (8th Cir. 2012) (habeas statute of limitations began running the day after the deadline for filing a petition for review with the Arkansas Supreme Court); Fed. R. Civ. P. 6(a)(1)(A) (excluding from the time computation the day of the event that triggers the time period).

- April 15, 2013: The deadline for Berks to seek discretionary review of his convictions with the Arkansas Supreme Court. He allows the deadline to expire without seeking discretionary review.

- April 16, 2013, Berks's state convictions become "final," and the one-year statute of limitations begins to run.

→ *15 days run against the statute of limitations*

- May 1, 2013: The limitations period is tolled when Berks files a timely Rule 37 petition in state court.

- February 7, 2014: The trial court denies Berks's motion for modification of the order denying Rule 37 relief. He has thirty days from that date (March 10, 2014) to file a notice of appeal to the Arkansas Supreme Court.

- March 10, 2014: Berks fails to file a notice of appeal, and his Rule 37 proceeding "ceases to pend," which triggers the resumption of the limitations period.

- March 11, 2014: The statute of limitations begins to run.

→ *All of the 350 days remaining for Berks to file a § 2254 action expire.*

- **February 23, 2015: The statute of limitations expires without Berks filing a § 2254 habeas petition.**

- April 7, 2015: Berks files with the Arkansas Supreme Court a *pro se* Motion for Belated Appeal of the trial court's denial of his Rule 37 petition.

- May 21, 2015: The Arkansas Supreme Court grants Berks's Motion for Belated Appeal.

- October 27, 2016: The Arkansas Supreme Court affirms the trial court's order denying Rule 37 relief.

- December 2, 2016: Berks "files" his § 2254 habeas Petition, almost two years *after* expiration of the statute of limitations.

When Berks missed the March 10, 2014 deadline for appealing the trial court's denial of his Rule 37 petition, that action "ceased to pend," and the limitations period for Berks to file a federal habeas petition began to run. *Coulter,* 871 F.3d at 622 (because no state post-conviction proceeding was "pending" between expiration of the time for prisoner to file a notice of appeal, and the date he filed a motion for belated appeal, there was no basis for tolling the one-year limitations period for initiating a § 2254 action). Thus, Berks's April 7, 2015 Motion for Belated Appeal of the trial court's decision to deny Rule 37 relief had *no effect* on the federal statute of limitations because it expired *before* Berks filed that Motion.[3] The law is clear that the statute of limitations for filing a federal habeas action "cannot be tolled after it expires." *Jackson v. Ault,* 452 F.3d 734, 735-36 (8th Cir. 2006).

Accordingly, Berks filed this action almost two years after expiration of the statute of limitations.

---

[3]When a state prisoner is permitted to proceed with an out-of-time appeal in his state post-conviction proceedings, the federal limitations period is tolled during the time his application for belated appeal is "pending." *Coulter,* 871 F.3d at 621-23; *Streu v. Dormire,* 557 F.3d 960, 963-65 (8th Cir. 2009). However, it is unclear whether the "pendency" begins when the prisoner *files* a motion for belated appeal, or when the state court *grants* the motion. *Coulter,* 871 F.3d at 622 n.2; *Streu,* 557 F.3d at 967 & n.3. Resolution of that issue does not affect the outcome here because the one-year limitations period expired *before* Berks filed his Motion for Belated Appeal.

## C. Equitable Tolling

A federal habeas petitioner may be entitled to equitable tolling of the statute of limitations if he can show that: (1) he has been "pursuing his rights diligently," but (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida,* 560 U.S. 631, 645, 649 (2010). To secure equitable tolling, a petitioner must show that "the extraordinary circumstance *caused* him to miss the original filing deadline." *Coulter,* 871 F.3d at 624 (emphasis in original).

To excuse his untimeliness, Berks asserts that extraordinary circumstances exist because: (1) he has "mental problems which cause [him] to live in a fantasy world much of the time"; (2) he has learning disabilities and problems with reading comprehension; and (3) he has had no legal representation. *Doc. 10, at 1-3; see also Doc. 2, at 20-21.*

The Eighth Circuit has made it clear that equitable tolling is *not* justified by a petitioner's *pro se* status, lack of legal knowledge or legal resources, or any confusion about the federal limitations period or state post-conviction law. *See, e.g., Johnson,* 678 F.3d at 611; *Shoemate v. Norris,* 390 F.3d 595, 597-98 (8th Cir. 2004).

However, a habeas petitioner's "mental impairment can be an extraordinary circumstance interrupting the limitation period," if the impairment is of sufficient "degree and duration" to actually interfere with his ability to file a timely habeas petition  *Nichols v. Dormire,* 11 F. App'x 633, 634 (8th Cir. 2001) (unpub.); *see*

8

*Martin v. Fayram,* 849 F.3d 691, 698 (8th Cir. 2017) (petitioner must show that his disability "was so severe that it precluded him from filing court documents or seeking the assistance of others to do so"); *Carpenter v. Douma*, 840 F.3d 867, 872 (7th Cir. 2016) (habeas petitioner must show that his physical and mental health "actually impaired his ability to pursue his claims"), *cert. denied,* 137 S. Ct. 2300 (2017); *Bills v. Clark,* 628 F.3d 1092, 1093 (9th Cir. 2010) (petitioner must show "a mental impairment so severe that [he] was unable personally either to understand the need to timely file or prepare a habeas petition, and that impairment made it impossible under the totality of the circumstances to meet the filing deadline despite petitioner's diligence").

In support of his equitable tolling argument, Berks points to: (1) medical records from the Menninger Foundation Children's Division consisting of psychological evaluations conducted in January and February 1985 showing diagnoses of psychogenic speech disorder and mixed personality disorder, with borderline schizotypal features and transient psychotic episodes, and a "Neurometric Report," dated January 28, 1985, showing "borderline evidence of [brain-based] dysfunction," which "suggests vulnerability to impulsive behavior and poor judgment" and was likely "contributing to [Berks's] learning problems related to spelling, reading, and other language and auditory memory skills," (*Doc. 10, at 10-12; Doc. 2, at 25-27; Doc. 8-6, at 98-99*); and (2) testimony at his trial from Dr. Bob

Gayle and Dr. James Moneypenny about his brain abnormalities and related mental problems (*Doc. 8-6, at 72-112.)*

The medical records from the Menninger Foundation reflect Berks's mental condition thirty years ago. Accordingly, they are too remote and indefinite to justify equitable tolling. *See Collins v. Scurr,* 230 F.3d 1362, *1 (8th Cir. 2000) (petitioner's assertion of mental incompetency at time of guilty plea three years earlier was too "remote" to "equitably toll the statute of limitations and excuse the late filing of his § 2254 petition").

During the sentencing phase of Berks's trial, in 2011, Dr. Gayle and Dr. Moneypenny testified that, for most of Berks's life, he had suffered from mental and emotional problems, with symptoms of paranoia, anxiety, and depression. According to their testimony, these symptoms worsened during stressful situations and were further exacerbated by physical problems, residuals from surgeries, chronic pain, and "pretty heavy duty" medications. *Doc. 8-6, at 72-112.* Neuropsychological testing also indicated a brain abnormality that prevented "appropriate adequate communication between the two cerebral hemispheres," impairing Berks's ability to "come up with reasonable decisions" and "maintain impulse control." *Id. at 81, 98.* Dr. Gayle testified that, although Berks had a "diminished culpable mental state" at the time of the crimes for which he was on trial, the medical evidence was not enough

to "sufficiently back up the case of not guilty by reason of mental disease or defect."

*Id. at 102-03.* [4]

While the testimony of Dr. Gayle and Dr. Moneypenny established that Berks had mental and emotional problems and some accompanying limitations in functioning, nothing about that testimony established that Berks had mental impairments of a "degree and duration" sufficient to justify equitable tolling of the statute of limitations. Thus, Berks's evidence does not demonstrate that, during the applicable time period for filing a federal habeas action – April 2013 through February 2015 – he was so incapable of rational thought that he could not appreciate his legal situation or ascertain that he must take steps to protect his rights.

In fact, other evidence in the record shows that, during the period for filing a § 2254 habeas petition, Berks: (1) filed a timely and proper *pro se* Rule 37 petition in state court (*Doc. 8-10, at 12-19*); (2) filed a *pro se* motion for leave to amend, and a *pro se* amended Rule 37 petition with supporting exhibits (*id. at 20-23, 25-34*); (3) filed a *pro se* motion to modify the trial court's order, (*id. at 38-40*); and (4) corresponded with a court clerk on at least two occasions (*id. at 24; Doc. 8-11 at*

---

[4]Prior to Berks's trial, Dr. Paul Deyoub, a forensic psychologist, also evaluated Berks. He concluded that Berks: (1) had a somatoform disorder and a personality disorder (paranoid and antisocial); (2) had the capacity to understand the criminal proceedings against him and assist effectively in his defense; and (3) did not meet the statutory criteria for the affirmative defense of mental disease or defect. *Doc. 8-2, at 105-116.* Based on the evaluations of the three mental health experts, Berks's trial counsel elected not to pursue a mental-disease-or-defect defense. *Berks III,* 2016 Ark. 364, at 6-8, 501 S.W.3d at 370-72.

*29*). Six weeks after the one-year habeas period expired, he filed a *pro se* Motion for Belated Appeal (*Doc. 8-11)*, which the Arkansas Supreme Court granted.[5] Thus, Berks's own actions during and shortly after the applicable time period undercut his contention that he was mentally incapable of initiating a § 2254 federal action in a timely manner.

Finally, Berks has not demonstrated that he pursued his rights diligently. All of his § 2254 habeas claims were available to him at the time of his conviction. After receiving notice of the state post-conviction denial of his motion for modification, he waited thirteen months before seeking a belated appeal. During that thirteen-month period, the deadline passed for filing a timely federal habeas action. He offers no explanation for failing to pursue his federal rights between April 2013 and February 2015, the applicable time period. The fact that he chose to pursue a belated appeal in his state post-conviction proceedings, rather than a federal habeas action, does not excuse his lack of diligence. *See Pace v. DiGuglielmo,* 544 U.S. 408, 416 (2005) (refusing to apply equitable tolling during period that petitioner was "trying

---

[5]Importantly, the Arkansas Supreme Court granted Berks permission to proceed with a belated appeal because the trial court had failed to timely notify him of its order disposing of his motion for modification of the order denying him Rule 37 relief. Nothing in Berks's Motion for Belated Appeal suggested that his mental and emotional problems were responsible for him missing the deadline for filing the notice of appeal. *See Berks II,* 2015 Ark. 234, at 1, 463 S.W.3d at 290 ("Because Berks was not provided timely notice of an order that disposed of a motion for a ruling on omitted issues, the motion [for belated appeal] is granted."); *Doc. 8-11, at 5* (Berks's argument that the "failure to receive a copy of the order promptly [was] good cause to grant [his] motion for a belated appeal").

in good faith to exhaust state remedies," and observing that petitioner could have filed a "protective" habeas petition in federal court); *Gordon v. Arkansas,* 823 F.3d 1188, 1195 n.4 (8th Cir. 2016) (refusing to apply equitable tolling to period petitioner was attempting to exhaust state-court remedies).

Accordingly, Berks is not entitled to any equitable tolling.

## D.    Actual Innocence

Berks also asserts a claim of "actual and factual innocence." *Doc. 2, at 21; Doc. 10, at 6-8.* First, he argues that, because the state failed to present evidence to establish his intent to commit a criminal offense when he entered the victim's property, he is "factually innocent" of aggravated residential burglary. According to Berks, the state could not rely on the victim's beating death to establish the intent element for burglary because the state relied on the same conduct to support his conviction for second degree murder. *Doc. 2, at 21.* Second, he submits an affidavit from Anthony Jones, dated February 15, 2017, stating that his trial testimony against Berks was "fabricated."[6] *Doc. 10, at 20.* Liberally construing these allegations, the

---

[6]Prior to Berks's trial, Jones shared a jail cell with him for about three weeks. At Berks's trial, Jones testified that Berks said he had beaten someone to death, and had then burned his own clothes and dumped his tennis shoes in a creek. According to Jones, Berks said he and the victim had been friends in Minnesota, he had convinced the victim to move to Arkansas, and the victim had "touched" Berks's children but "would never touch another child." *Berks I,* 2013 Ark. App. 203, at 6, 427 S.W.3d at 102; *Doc. 8-5, at 109-36.* According to Jones's affidavit, all of that trial testimony was false.

Court must now consider whether they constitute a "gateway" claim of actual innocence that would permit review of Berks's otherwise untimely claims.

In *McQuiggin v. Perkins,* 133 S. Ct. 1924, 1928 (2013), the Court held that "actual innocence, if proved, serves as a gateway through which a habeas petitioner may pass" to overcome the expiration of the statute of limitations. The Court cautioned that "tenable actual-innocence gateway pleas are rare," and reiterated the "demanding" standard articulated in its previous cases. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no jury, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (citing *Schlup v. Delo,* 513 U.S. 298, 329 (1995) and *House v. Bell,* 547 U.S. 518, 538 (2006)). The actual-innocence exception requires a habeas petitioner to come forward with "new reliable evidence" which was not available at trial through the exercise of due diligence." *Schlup,* 513 U.S. at 324. Finally, the Court has emphasized that the exception is concerned with "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Berks's first argument, that the same conduct could not be used to support both his burglary and murder convictions, is a claim of legal innocence -- not actual innocence. *See Wallace v. Lockhart,* 12 F.3d 823, 826-27 (8th Cir. 1994) (actual-innocence exception did not apply to overcome petitioner's procedural default of

double jeopardy claim). Accordingly, it is not a gateway claim that is cognizable under *McQuiggin.*

Berks's recently obtained affidavit from Jones, which attempts to recant his trial testimony, falls far short of the high evidentiary standard required to meet the demanding actual-innocence exception. Witness recantations of trial testimony "generally are viewed with suspicion." *Wadlington v. United States*, 428 F.3d 779, 784 (8th Cir. 2005).[7] Moreover, in evaluating an actual-innocence claim, a federal habeas court must consider "all the evidence, old and new, incriminating and exculpatory," and make a "probabilistic determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at 538 (internal quotation marks omitted).

Jones's testimony was only one piece of the evidence against Berks. In Berks's direct appeal, the Arkansas Court of Appeals found that there was "ample testimony and evidence that [the victim's] death was caused by a prolonged assault and that [Berks] was the perpetrator." *Berks I,* 2013 Ark. App. 203, at 7, 427 S.W.3d at 103. The investigating officers and paramedics testified that the contents of the victim's home had been disturbed, there was blood all through the house, and the

---

[7]Inherent in any recantation is the admission that the witness "either is lying now, was lying then, or lied both times." *United States v. Provost*, 969 F.2d 617, 620 (8th Cir. 1992). "The stability and finality of verdicts would be greatly disturbed if courts were too ready to entertain testimony from witnesses who have changed their minds, or who claim to have lied at trial." *United States v. Grey Bear*, 116 F.3d 349, 350 (8th Cir. 1997).

victim's broken glasses, watch and hearing aid were found on the floor. The state medical examiner opined that the victim's death was a homicide caused by blunt-force trauma to the head. DNA evidence showed that shoes belonging to Berks were consistent with footprints on the victim's bloody shirt. Several witnesses testified that the victim was afraid of Berks, and that Berks had mentioned harming the victim before he was killed. Two witnesses – *one of whom was Jones* -- testified that Berks told them he had beaten someone and gave specific details. *Id.* at 1-7, 427 S.W.3d at 100-03.

In light of the strong independent evidence of Berks's guilt, Jones's affidavit stating that his trial testimony was "fabricated" is insufficient to meet the actual-innocence standard. *See Sawyer v. Whitley,* 505 U.S. 333, 349 (1992) ("[L]atter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness's] account of petitioner's actions.")

Accordingly, the actual-innocence exception does not apply to overcome the expiration of the statute of limitations.

### III. Conclusion

For the foregoing reasons, this Petition should be denied in its entirety as untimely. IT IS THEREFORE RECOMMENDED THAT:

1.   This 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus (*Doc. 2*) be DENIED, and this habeas action be DISMISSED, WITH PREJUDICE; and

2.   A Certificate of Appealability be DENIED; *see* 28 U.S.C. § 2253(c); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

DATED this 30th day of November, 2017.

_____
UNITED STATES MAGISTRATE JUDGE